USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/12/2022__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LINDA PAULSON,

                Plaintiff,

    -v-

GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA,

                Defendant.
-----------------------------------------------------------------X

**OPINION AND ORDER**

22-CV-2172 (GHW) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

Linda Paulson filed this action against the Guardian Life Insurance Company of America ("Guardian") asserting claims for benefits governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001, *et seq.* Guardian has moved to transfer the action, arguing that because Paulson resides in Virginia and none of the facts giving rise to the case occurred in New York, the case should be transferred to the Eastern District of Virginia. For the reasons set forth below, this action is transferred to the United States District Court for the Eastern District of Virginia.[1]

---

[1] Because a motion to transfer venue is non-dispositive, this Court, to whom the case was referred by Judge Woods for general pretrial supervision including non-dispositive pre-trial motions (Dkt. No. 5), will adjudicate it by opinion and order pursuant to 28 U.S.C. § 636(b)(1)(A) (rather than by issuing a report and recommendation). *See, e.g., United States ex rel. Fisher v. Bank of Am., N.A.*, 204 F. Supp. 3d 618, 620 n.1 (S.D.N.Y. 2016); *Adams v. Barnhart,* No. 03–CV–1362 (KMW) (GWG), 2003 WL 21912543, at *1 (S.D.N.Y. Aug. 8, 2003). Under Rule 72(a) of the Federal Rules of Civil Procedure, a district judge may modify or set aside any

1

## I.   BACKGROUND

Paulson is a resident of Alexandria, Virginia, which is in the Eastern District of Virginia. Plaintiff's Complaint ("Compl.") at ¶1, Dkt. No. 1; Declaration of Melanie Wiltrout, dated May 24, 2022 ("Wiltrout Decl."), Exhibits 2–6, Dkt. No. 12. She seeks benefits under Guardian's Group Plan Number 512432, in which she was a participant while employed at the Washington Area Women's Foundation, an organization located in Washington D.C. Compl. at ¶¶1, 7–8; Wiltrout Decl., Exh. 1. While she was an eligible employee under the plan, Paulson contends that she started suffering from migraine disease, cervical radiculopathy, chronic pain, temporomandibular joint disorder, and carpal tunnel syndrome, rendering her disabled within the meaning of Guardian's policy. Compl. at ¶¶13, 15. As a result, Paulson alleges that she is unable to "perform the material and substantial duties" of any occupation. *Id*. at ¶14. Paulson filed a claim for long term disability benefits and was approved by Guardian but only for a period of 24 months because, according to Guardian, Paulson's condition limited her to a "maximum payment period." *Id*. at ¶¶29–30. Paulson believed this determination was incorrect and appealed the decision through Guardian's appeals process but was denied. *Id*. at ¶50.

Paulson commenced this action on March 16, 2022. She asserts that Guardian breached its obligations under ERISA by limiting the benefits she received, and that Guardian breached its duties by failing to provide Paulson with

---

portion of a magistrate judge's non-dispositive order only if it is found to be "clearly erroneous or contrary to law." Fed R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

certain information she requested pursuant to 29 C.F.R. § 2560.503-1, which entitled her to reasonable access to all information relevant to a claim for benefits. *Id.* at ¶¶75, 78.

On May 27, 2022, Guardian filed a motion to transfer the case. Motion to Transfer, Dkt. No. 10; Memorandum of Law in Support of Motion to Transfer ("Def. Mem."), Dkt. No. 11. Along with its motion, Guardian filed the Wiltrout Declaration and Exhibits 1–12. Paulson filed opposition papers on June 8, 2022. Memorandum of Law in Opposition ("Pl. Opp."), Dkt. No.13; Declaration of Jason Newfield ("Newfield Decl."), dated June 8, 2022, Dkt. No. 14; and Declaration of Linda Paulson ("Paulson Decl."), dated June 8, 2022, Dkt. No. 15. Guardian submitted its reply papers on June 15, 2022. Reply Memorandum of Law in Support of Motion to Transfer, ("Def. Reply"), Dkt. No. 20; Second Declaration of Melanie Wiltrout ("Wiltrout Second Decl."), dated June 15, 2022. Dkt. No. 18.

Judge Woods referred this case to me for general pretrial supervision on March 18, 2022. Dkt. No. 5.

## II. DISCUSSION

### A. Legal Standard

Under the general venue provision, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is

3

>subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  For venue purposes, a "natural person" resides in the district where the person is domiciled, and a defendant corporation generally resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. §§ 1391(c)(1) and (2).  Where a state has more than one judicial district, a defendant corporation generally "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d).[2]  Further, ERISA provides that an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).

Even if venue is proper, the Court may still transfer claims "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

Determining whether transfer is appropriate is a two-step inquiry.  First, courts are required to determine whether the case could have been brought in the

---

[2] In a state with multiple districts, if there is no such district, "the corporation shall be deemed to reside in the district within which it has the most significant contacts." 28 U.S.C. § 1391(d).

4

proposed transferee district, if that district "has personal jurisdiction over the defendant and venue is proper there." *Nuss v. Guardian Life Ins. Co. of America*, No. 20-CV-9189 (MKV), 2021 WL 1791593, at *2 (S.D.N.Y. May 5, 2021). If that threshold issue is met, courts then consider the totality of the following factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of the circumstances. *See, e.g., D.H. Blair & Co*, 462 F.3d at 106–07; *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 459 (S.D.N.Y. 2011).

### B. Analysis

For the following reasons, the Court concludes that venue in this District is proper under ERISA, but that transfer is still appropriate in this case.

#### 1. Venue in this District is Proper Under ERISA

"An ERISA action may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." *McQuennie v. Carpenters Loc. Union 429*, No. 15-CV-00432, 2015 WL 6872444, at *1 (D. Conn. Nov. 9, 2015) (quoting 29 U.S.C. § 1132(e)(2)). Here, as to this District, the first two prongs are not satisfied—the plan was administered in Washington D.C. and the breach took place in Virginia. Compl. at ¶7, Def. Mem. at

3.[3]  However, the third prong is satisfied because Guardian's headquarters are in this District.  Compl. at ¶2.[4]  Accordingly, under ERISA, venue in this District is proper.

### 2. Transfer is Appropriate in this Case

Although venue in this District is proper, under 28 U.S.C. § 1404(a), transfer is appropriate in this case.  The threshold issue is met, as this action could have been filed in the Eastern District of Virginia.  Paulson resides in Virginia, *see id.* at ¶1, and although Guardian is headquartered in New York, Guardian has "impliedly consented to personal jurisdiction . . . by moving to transfer venue," to the Eastern District of Virginia.  *Nuss*, 2021 WL 1791593, at *2 (collecting cases).  Furthermore, Paulson does not dispute that the action could have been brought in the Eastern

---

[3] Courts find a plan to be "administered" in the district where the plan was "managed or directed." *McQuennie*, 2015 WL 6872444, at *1 (quoting *Ret. Plan of Unite Here Nat'l Ret. Fund v. Vill. Resorts, Inc.*, No. 08-CV-4249 (RPP), 2009 WL 255860, at *3 (S.D.N.Y. Feb. 3, 2009)) (collecting cases).  In addition, most courts in the Second Circuit find that for purposes of ERISA, the "breach" takes place in the district where the plaintiff was to receive benefits. *McQuennie*, 2015 WL 6872444, at *2.

[4] Guardian argues that since it issued the plan to an employer based in Washington D.C., communicated with Paulson at her residence in Virginia, and paid benefits to her there, that Guardian "may be found" in the Eastern District of Virginia.  Def. Mem. at 3.  Courts interpret "found" liberally, *Varsic v. United States Dist. Court*, 607 F.2d 245, 248 (9th Cir. 1979), and "in New York, courts look to several factors to determine whether they have personal jurisdiction over a corporate defendant, including the maintenance of bank accounts and other property in New York; the presence of employees in New York; the existence of an office in New York; and the solicitation of business in New York." *Seitz v. Bd. of Trustees of the Pension Plan of the New York State Teamsters Conf. Pension & Ret. Fund*, 953 F. Supp. 100, 102 (S.D.N.Y. 1997) (internal quotation marks omitted).  Accordingly, as Guardian's headquarters are in this District, Guardian "may be found" here.

District of Virginia.  Pl. Opp. at 1.  As to the second step, the transfer factors, as discussed below, either weigh in favor of transfer or are neutral.

### a. Deference to Paulson's Choice of Forum

In an ERISA case, courts must give great weight to a plaintiff's choice of forum because when enacting ERISA, Congress purposefully made the venue provision broad.  *See, e.g.*, *Tritt v. Automatic Data Processing, Inc. Long Term Disability Plan Adm'r*, No. 06-CV-2065 (CFD), 2008 WL 2228841, at *2 (D. Conn. May 27, 2008).  However, a plaintiff's choice of forum is given less weight when her choice of forum is not where she resides.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  In addition, if the operative facts "have few meaningful connections to the plaintiff's chosen forum, the importance of the plaintiff's choice measurably diminishes."  *Nuss*, 2021 WL 1791593, at *3 (internal quotation marks omitted).

Here, Paulson's choice of forum is not entitled to great weight because this District is not her home, nor are the operative facts tied to this District.  In fact, based on the record, the only tie Paulson has to this District is that her counsel's place of business is in New York.  *See Studiengesellschaft v. Kohle MBH v. Shell Oil Co.*, No. 93-CV-1868 (PKL), 1993 WL 403340, at *4 (S.D.N.Y. Oct. 8, 1993) ("[T]he weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither [her] home nor

the place where the cause of action arose."). Accordingly, this factor weighs in favor of transfer.[5]

### b. Convenience of Parties

The convenience of the parties depends on "the parties' principal place of business, the location of their offices, or their residences." *Travelers Prop. Cas. Co. of America v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 376 (W.D.N.Y. 2018) (quoting *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 618 (S.D.N.Y. 2016)).

Based on the record, it appears that litigating this case in the Eastern District of Virginia would be more convenient for Paulson. Paulson states in her declaration opposing the motion, without supporting documentation, that it will be difficult for her to travel to court regardless of where the case is litigated. Paulson Decl. at ¶14. However, considering the location of her full-time residence and her

---

[5] Much of Paulson's opposition to transferring the action is predicated on the argument that her counsel is based in New York. Pl. Opp. at 7, 9. However, the convenience and considerations of counsel do not factor in the analysis to transfer. *See, e.g., Joyner v. Cont'l Cas. Co.*, No. 11-CV-6005 (JSR), 2012 WL 92290, at *1 (S.D.N.Y. Jan. 9, 2012) ("the fact that plaintiff retained an attorney in New York to represent her does not shift the locus of operative facts underlying the dispute to his office"). Notably, Paulson's counsel is based in Garden City, New York, which is not even in this District but is in the Eastern District of New York. Moreover, the firm holds itself out as "national disability lawyers," thus suggesting a nation-wide rather than local practice and one equipped to litigate in other states such as Virginia. *See* www.frankelnewfield.com. *See, e.g., Bluelink Marketing, LLC, v. Carney*, No. 16-CV-7151 (JLC), 2017 WL 5565223, at *2 n.4 (S.D.N.Y. Nov. 28, 2017) ("[T]he Court generally has the discretion to take judicial notice of internet material," such as a law firm's website) (quotation omitted); *RBS Holdings, Inc. v. Gordon & Ferguson, Inc.*, No. 06-CV-6404 (HB)(KNF), 2007 WL 2936320, at *2 (S.D.N.Y. Oct. 4, 2007) (court may take judicial notice about law firm from its website).

8

apparent financial and health constraints, it is reasonable to conclude that litigating the case in the state in which she resides will be more convenient. *See, e.g.*, *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006) (plaintiffs who reside outside New York "cannot claim that New York is the more convenient forum for them"). Furthermore, the transfer to Virginia would be more convenient for Guardian as nearly all its identified non-party witnesses are located in the Washington D.C. and Virginia area. Wiltrout Second Decl. at ¶3. This factor weighs in favor of transfer.

### c. Locus of Operative Facts

In considering the locus of operative facts in ERISA cases, the court should consider "where the plaintiff lived, worked, applied for benefits, and received payments." *Nuss,* 2021 WL 1791593, at *7. In *McQuennie*, the court found that although the plaintiff had filed his ERISA action in the District of Connecticut, the operative facts, including where the plaintiff had worked, and the history of his interactions and communications with the trust that operated the pension plan in question, occurred in the Central District of California. 2015 WL 6872444, at *4. Thus, the court found this factor weighed in favor of transfer. *Id.*

Here, as in *McQuennie*, the locus of operative facts did not occur in the district in which Paulson filed the action. Paulson currently resides in Virginia and resided in Virginia at the time she received benefits as well as during the pendency of her claim. Compl. at ¶1; Wiltrout Decl., Exh. 2. Further, when Paulson was working, her job was located in Washington D.C. Wiltrout Decl., Exh. 1. Finally, Guardian's review and decision regarding Paulson's claim occurred in

9

Pennsylvania. Def. Mem. at 5. Therefore, none of the operative facts took place in New York let alone in this District.

Paulson argues that the locus of operative facts "bears little importance" in this ERISA matter and also that "the locus of operative facts is split amongst several forums." Pl. Opp. at 12–13. However, Paulson has not provided any case law to support her statement that the location of operative facts "bears little importance." In addition, while it is true that Paulson and Guardian consulted with doctors outside the Eastern District of Virginia and Washington D.C., it appears, as noted above, that most of the doctors Paulson consulted are in the Washington D.C. and Virginia area. Wiltrout Second Decl. at ¶2. As such, it does not appear that the locus of operative facts is truly split between several forums. Taking these facts together, most of which occurred in Virginia or neighboring Washington D.C., this factor weighs in favor of transfer.

### d. Relative Means of the Parties

"A disparity of means does not weigh in the plaintiffs' favor unless they 'offer documentation to show that transfer would be unduly burdensome to [their] finances." *Peroutka v. Yeti Coolers, LLC*, No. 18-CV-6827 (AMD) (CLP), 2020 WL 1283148 at *5 (E.D.N.Y. Mar. 17, 2020), quoting *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 31 (S.D.N.Y. 2016). Paulson states that although she resides in Virginia, transferring this case to the Eastern District of Virginia would impose a hardship on her. Paulson Decl. at ¶¶11–14.[6] Without supporting documentation, Paulson

---

[6] Presumably, current counsel could file a *pro hac vice* motion and continue to appear on Paulson's behalf in Virginia. According to the Eastern District of

10

argues that if the action is transferred to the Eastern District of Virginia, she would have to add a local attorney to the case and that process would be "overwhelming" considering her physical condition. *Id.* at ¶12. She explains that filing the case in New York saved on expenses because it meant her counsel did not have to travel; however, she also acknowledges that she has retained counsel on a contingency fee basis. *Id.* at ¶¶13–15. Again, these facts are all presented without any supporting documentation and as such, this factor cannot weigh in favor of remaining in this District. At most, this factor appears to be neutral. *C.f., Peroutka*, 2020 WL 1283148, at *5 (no financial hardship where plaintiff had not provided evidence to prove such).

### e. Convenience of the Witnesses and Ability to Serve Process to Compel the Attendance of Witnesses

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 29–30 (E.D.N.Y. 2014). While this "factor may be less significant in the ERISA context," *Nuss*, 2021 WL 1791593 at *5, because such cases rarely go to trial, to the extent there is a possibility for the need for witnesses, this factor weighs in favor of transfer. As stated above, Paulson resides in Virginia, as do many of the physicians she consulted in putting together her appeal. Wiltrout Second Decl. at ¶2. Any Guardian employees that would need to be witnesses reside in Pennsylvania, not this District. *Id.* Neither Guardian nor

---

Virginia website, the *pro hac vice* motion fee in that court is only $75.00. *See* www.vaed.uscourts.gov.

Paulson identify any potential witnesses who reside in New York. Finally, to the extent any third-party witnesses need to be compelled to appear, Guardian argues that the third-party witnesses reside in Virginia so it will be less complicated to maintain the action in the Eastern District of Virginia. Def. Mem. at 9. The Court agrees. This factor weighs in favor of transfer.

### f. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

This factor is not relevant here. "It is well established . . . that modern photocopying technology and electronic storage deprive this issue of practical or legal weight." *Tritt*, 2008 WL 2228841, at *3 (quoting *Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.*, 294 F. Supp. 2d 218, 221 (D. Conn. 2003)). Neither party disputes that the availability of electronic records renders this factor irrelevant. Pl. Opp. at 8, Def. Mem. at 4, n. 1.

### g. Forum's Familiarity with Governing Law

Although Paulson argues that this factor weighs in favor of remaining in this District because this District has greater familiarity with ERISA, this factor is neutral. Pl. Opp. at 6. Paulson has only alleged claims under ERISA, a federal statute. As such, "all federal courts are presumed to be equally familiar with federal law." *Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 229 (S.D.N.Y. 2015) (citations omitted).

### h. Trial Efficiency and Interests of Justice

Guardian argues that this factor weighs in favor of transfer because the docket in the Southern District of New York is more congested than in the Eastern

12

District of Virginia.  Def. Reply at 8.  Paulson does not refute Guardian's argument, but instead contends that because this District has so many ERISA cases, it is more familiar with the law, and as such, better suited to adjudicate the matter.  Pl. Opp. at 6.  But as ERISA is a federal law, any federal jurisdiction is equipped to adjudicate the matter.  While docket congestion is "insufficient" by itself to warrant transfer, here, it is not the sole basis.  *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d. at 171.  Thus, this factor weighs in favor of transfer.

### III.     CONCLUSION

For the reasons stated above, transfer of this case to the United States District Court for the Eastern District of Virginia is appropriate.  Therefore, Guardian's motion is granted.  Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, the Court will delay issuing the order of transfer to allow Paulson 14 days to file any objections.  In the absence of any objections, the Court will direct the Clerk, by separate order issued after July 26, 2022, to effectuate the transfer.

**SO ORDERED.**

Dated: July 12, 2022
       New York, New York

_____
JAMES L. COTT
United States Magistrate Judge